{¶ 41} I respectfully dissent from the majority opinion because I believe the trial court was correct to suppress the statement by defendant-appellee, Michael Coleman, that he drank a couple of beers.
 {¶ 42} As indicated by the majority, Miranda rights warnings are required for a custodial interrogation. Miranda v. Arizona (1966),384 U.S. 436. The relevant inquiry is whether a reasonable person in the suspect's position would understand that he was in the custody of the police at the time of the interrogation. Berkemer v. McCarty (1984),468 U.S. 420, 422, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317. As acknowledged by the majority, McCarty held that even though the "roadside questioning of a motorist detained pursuant to a routine traffic stop is not a custodial interrogation," the Court added that "it is possible that a motorist who has been detained pursuant to a traffic stop can thereafter be subjected to treatment that renders him 'in custody' for practical purposes." Id. at ¶ 20, citing McCarty, 468 U.S. at 440-441,104 S.Ct. 3138, 3151, 82 L.Ed.2d 317.
 {¶ 43} I believe there are a combination of factors specific to this case, especially the timeline of events, that would lead a reasonable person in Coleman's position to understand that he was "in custody" for practical purposes when he was asked about drinking the second time. When Trooper Vail initially approached the *Page 14 
vehicle, Coleman was unable to produce a driver's license, vehicle registration documents, or proof of insurance. Because of this, the majority reasons that Trooper Vail and Coleman needed to retreat to Trooper Vail's cruiser so that he could verify Coleman's identification and complete the traffic stop for speeding. Id. at ¶ 33, 35, 36. However, Trooper Vail testified that upon his initial approach to the vehicle, Coleman was able to provide Trooper Vail with a photo identification issued by his employer and his social security number. (Tr. 23.) Therefore, I'm not entirely convinced by the majority that there was a need for Coleman to return with Trooper Vail to the cruiser in order to verify his information.
 {¶ 44} Also during the initial approach to Coleman's vehicle, Trooper Vail noticed a "moderate odor of alcohol coming from thevehicle." (Tr. 24.) Notably, it was not until Trooper Vail had Coleman in the cruiser that he noticed that Coleman had a moderate odor of alcohol coming from his person and observed that Coleman had bloodshot eyes, slurred speech, and a red face (Tr. 24-27.)
 {¶ 45} Sometime between the initial stop and the HGN test, Trooper Vail asked Coleman for the first time if he had been drinking and Coleman replied that he had not. (Tr. 27.) Also, after Trooper Vail ran Coleman's social security number through dispatch, but before the HGN test, dispatch advised Trooper Vail (with Coleman still present in the cruiser) of Coleman's history of DUI convictions. (Tr. 38-39.) Trooper Vail then administered the HGN test to Coleman, which he failed and Trooper Vail informed Coleman of this fact. Based on these facts and how this traffic stop developed, I believe it was at this point that a reasonable person in Coleman's position would understand that he was "in custody" for practical purposes. Consequently, Trooper Vail should have informed Coleman of his Miranda rights before any further questioning, including his second inquiry to Coleman about whether he had been drinking.
 {¶ 46} For these reasons, I would respectfully affirm the trial court's decision to suppress the statement of defendant-appellee. *Page 1